# In the
# United States Court of Appeals
## For the Second Circuit

————————————

August Term, 2014

(Argued: June 4, 2015      Decided: April 22, 2016)

Docket No. 11-4283-cv

————————————

EKATERINA SCHOENEFELD,

*Plaintiff-Appellee,*

—v.—

ERIC T. SCHNEIDERMAN, in his official capacity as Attorney General of the State of New York; ALL JUSTICES OF NEW YORK SUPREME COURT, APPELLATE DIVISION, THIRD JUDICIAL DEPARTMENT; ROBERT D. MAYBERGER, in his official capacity as Clerk of New York Supreme Court, Appellate Division, Third Judicial Department; JOHN G. RUSK, Chairman of the Committee on Professional Standards ("COPS"),

*Defendants-Appellants,*

STATE OF NEW YORK; NEW YORK SUPREME COURT, APPELLATE DIVISION, THIRD JUDICIAL DEPARTMENT; COMMITTEE ON PROFESSIONAL STANDARDS OF NEW YORK SUPREME COURT, APPELLATE DIVISION, THIRD JUDICIAL DEPARTMENT AND ITS MEMBERS,

*Defendants.*

————————————

Before:

RAGGI, HALL, CARNEY, *Circuit Judges.*

————————————

1

Appeal from a judgment of the United States District Court for the Northern District of New York (Kahn, *J.*) declaring unconstitutional, under the Privileges and Immunities Clause, a New York law requiring nonresident attorneys to maintain an "office for the transaction of law business" within New York State in order to practice law in that state's courts. N.Y. Judiciary Law § 470; <u>see</u> U.S. Const. art. IV, § 2. In response to a certified question from this court, the New York Court of Appeals has clarified that § 470 cannot be satisfied by anything less than a physical office, a decision that does not allow us to avoid deciding plaintiff's constitutional challenge. We here conclude that § 470 does not violate the Privileges and Immunities Clause because it was enacted not for a protectionist purpose to favor New York resident attorneys but, rather, to provide a means whereby nonresidents could establish a physical presence in the state akin to that of residents, thereby resolving a service concern while allowing nonresidents to practice law in the state's courts.

REVERSED AND REMANDED.

Judge HALL dissents in a separate opinion.

————————

EKATERINA SCHOENEFELD, Schoenefeld Law Firm LLC, Princeton, New Jersey, *pro se.*

LAURA ETLINGER, Assistant Solicitor General (Barbara D. Underwood, Solicitor General; Andrea Oser, Deputy Solicitor General, *on the brief*), *for* Eric T. Schneiderman, Attorney General of the State of New York, Albany, New York, *for Defendants-Appellants*.

David B. Rubin, Esq., Metuchen, New Jersey, *for Amicus Curiae* The New Jersey State Bar Association, *in support of Plaintiff-Appellee*.

Leah M. Nicholls, Brian Wolfman, Institute for Public Representation, Washington, D.C., *for Amici Curiae* New York-Licensed Nonresident Attorneys, *in support of Plaintiff-Appellee*.

---

REENA RAGGI, *Circuit Judge*:

On this appeal, we must decide whether New York violates the Constitution's Privileges and Immunities Clause, see U.S. Const. art. IV, § 2, by requiring nonresident members of its bar to maintain a physical "office for the transaction of law business" within the state, when resident attorneys are not required to maintain offices distinct from their homes, N.Y. Judiciary Law § 470. Having now received the New York Court of Appeals' response to our certified question as to the "minimum requirements necessary to satisfy" § 470's office mandate, see Schoenefeld v. New York, 748 F.3d 464 (2d Cir. 2014); Schoenefeld v. State, 25 N.Y.3d 22, 6 N.Y.S.3d 221 (2015) (holding § 470 to require physical office), we conclude that § 470 does not violate the Privileges and Immunities

Clause because it was not enacted for the protectionist purpose of favoring New York residents in their ability to practice law. To the contrary, the statute was enacted to ensure that nonresident members of the New York bar could practice in the state by providing a means, i.e., a New York office, for them to establish a physical presence in the state on a par with that of resident attorneys, thereby eliminating a service-of-process concern. We identify no protectionist intent in that action. Indeed, it is Schoenefeld who, in seeking to practice law in New York without a physical presence in the state, is looking to be treated differently from, not the same as, New York resident attorneys. Such differential treatment is not required by the Privileges and Immunities Clause. Accordingly, we reverse the judgment of the United States District Court for the Northern District of New York (Lawrence E. Kahn, *Judge*) declaring § 470's office requirement unconstitutional, see Schoenefeld v. New York, 907 F. Supp. 2d 252 (N.D.N.Y. 2011), and we remand the case with instructions to enter judgment in favor of defendants on Schoenefeld's Privileges and Immunities claim.[1]

---

[1] Because Schoenefeld has not appealed the district court's February 8, 2010 dismissal of her Equal Protection and Commerce Clause challenges to § 470, dismissal of her remaining Privileges and Immunities claim should conclude this litigation.

## I.    <u>Background</u>

Because the facts and procedural history underlying this appeal are set forth in our prior panel opinion with which we assume familiarity, we reiterate them here only insofar as necessary to explain our decision to reverse and remand.

### A.    <u>The Privileges and Immunities Clause Challenge to N.Y. Judiciary Law § 470</u>

Plaintiff Ekaterina Schoenefeld, a citizen and resident of New Jersey, is licensed to practice law in New Jersey, New York, and California.  She maintains an office in New Jersey, but not in New York.  She asserts that she has declined occasional requests to represent clients in New York state courts to avoid violating N.Y. Judiciary Law § 470, which states as follows:

> A person, regularly admitted to practice as an attorney and counsellor, in the courts of record of this state, <u>whose office for the transaction of law business is within the state</u>, may practice as such attorney or counsellor, although he resides in an adjoining state.

N.Y. Judiciary Law § 470 (McKinney 2016) (emphasis added).  Schoenefeld seeks a judicial declaration that the office requirement imposed by § 470 on nonresident members of the New York bar violates the Constitution's Privileges and Immunities Clause by infringing on nonresidents' right to practice law in

New York.  The district court agreed and, on the parties' cross-motions for summary judgment, declared § 470 unconstitutional.  See Schoenefeld v. New York, 907 F. Supp. 2d at 262–66.  This timely appeal followed.

B.    This Court's Certification to the New York Court of Appeals

In appealing the district court's ruling, New York State's Attorney General, on behalf of all defendants, initially argued that this case presented no Privileges and Immunities Clause concern because § 470's office requirement could be construed to demand only "an address for accepting personal service," which could be satisfied by a designated agent.  Schoenefeld v. New York, 748 F.3d at 467.  Alternatively, the Attorney General argued that, even if § 470 did treat nonresident attorneys differently from resident attorneys, it did not violate the Privileges and Immunities Clause because the burden imposed on nonresidents was "incidental" and substantially related to New York's sufficient state interest in the service of legal papers.  Id.

Seeking to avoid a possibly unnecessary constitutional question, see Arizonans for Official English v. Arizona, 520 U.S. 43, 78–79 (1997) (explaining that, in confronting constitutional challenge to statute, court must first determine if any reasonable construction "will contain the statute within constitutional

bounds," and emphasizing that "[w]arnings against premature adjudication of constitutional questions bear heightened attention" where federal court is asked to invalidate state statute), but uncertain as to whether New York's highest court would, in fact, construe § 470 as urged by defendants, see Schoenefeld v. New York, 748 F.3d at 468–69 (observing that New York's lower courts had never interpreted § 470 to be satisfied by less than physical office space), this court certified the following question to the New York Court of Appeals:

> Under New York Judiciary Law § 470, which mandates that a nonresident attorney maintain an "office for the transaction of law business" within the state of New York, what are the minimum requirements necessary to satisfy that mandate?

Id. at 471.

The Court of Appeals accepted the certification and, upon review, held that § 470 "requires nonresident attorneys to maintain a physical office in New York." Schoenefeld v. State, 25 N.Y.3d at 25, 6 N.Y.S.3d at 222. In so ruling, the court observed that the statute, initially enacted in 1862, "appears to presuppose a residency requirement for the practice of law in New York State," to which "[i]t then makes an exception, by allowing nonresident attorneys to practice law if they keep an 'office for the transaction of law business'" in New York. Id. at 27, 6 N.Y.S.3d at 223. The Court acknowledged that the 1862 statute had linked the

office requirement to service of process, so that "service, which could ordinarily be made upon a New York attorney at his residence, could be made upon the nonresident attorney through mail addressed to his office." Id., 6 N.Y.S.3d at 224. But, the two statutory parts were severed in 1909, with the office requirement codified at § 470 making no reference to service. See id. at 27–28, 6 N.Y.S.3d at 224. In these circumstances, the Court of Appeals concluded that the term "office," as used in § 470, could not be construed to mean only an address or agent sufficient for the receipt of service. Rather, the plain meaning of "office," particularly when joined with "the additional phrase 'for the transaction of law business,'" requires "nonresident attorneys to maintain a physical office in New York." Id. at 25, 28, 6 N.Y.S.3d at 222, 224.

The Court of Appeals acknowledged a legitimate state interest in ensuring that personal service can be made on nonresident attorneys practicing in New York courts. But, in construing the statute, it observed that the "logistical difficulties" with service at the time the office requirement was enacted had largely been overcome by state law authorizing "several means of service upon a nonresident attorney, including mail, overnight delivery, fax and (where permitted) email," id. at 28, 6 N.Y.S.3d at 224 (citing N.Y. C.P.L.R. 2103(b)

(McKinney 2015)), as well as the court's own rule conditioning the admission of nonresident attorneys without full-time employment in New York upon their designation of "the clerk of the Appellate Division in their department of admission as their agent for the service of process," id., 6 N.Y.S.3d at 224–25 (citing N.Y. Comp. Codes R. & Regs. tit. 22, § 520.13(a) (2015)).  Thus, the office requirement could not be construed to require only an address for service.  The term was properly understood to require a physical premises.

Because the Court of Appeals' response to our certified question does not moot Schoenefeld's constitutional challenge to § 470, we proceed to address her claim and conclude that it fails on the merits.[2]

---

[2] Our dissenting colleague, Judge Hall, suggests that such a conclusion means it was unnecessary—and therefore improper—to certify the question of § 470's minimum requirements to the New York Court of Appeals.  See Dissenting Op., post at 4–5, 6 n.1.  This court, however, has recognized certification to be appropriate where a state statute is "fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question." Nicholson v. Scoppetta, 344 F.3d 154, 168 (2d Cir. 2003) (internal quotation marks omitted) (certifying state-law questions of statutory interpretation to New York Court of Appeals that would "render unnecessary, or at least substantially modify, the federal constitutional question").  That is this case.  As our prior panel opinion explained, New York's Attorney General there argued that § 470 could be read to require only an address for accepting personal service, under which reading the Privileges and Immunities Clause would not be "implicate[d]."  Schoenefeld v. New York, 748 F.3d at 467; see also id. at 469 (acknowledging that Supreme Court has "urged the federal courts of appeals to use certification in order to avoid deciding constitutional questions unnecessarily

## II.  Discussion

### A.  Standard of Review

We review an award of summary judgment <u>de novo</u>, and will affirm if "viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact." <u>Baldwin v. EMI Feist Catalog, Inc.</u>, 805 F.3d 18, 25 (2d Cir. 2015) (internal quotation marks and citation omitted). "Claims turning entirely on the constitutional validity or invalidity of a statute," such as the Privileges and Immunities challenge here, "are particularly conducive to disposition by summary judgment as they involve purely legal questions." <u>Connecticut ex rel. Blumenthal v. Crotty</u>, 346 F.3d 84, 93 (2d Cir. 2003).

---

or prematurely" (internal quotation marks omitted)).  Further, the Attorney General specifically requested certification if this court could not predict whether the New York Court of Appeals would adopt this reading.  <u>See</u> <u>Allstate Ins. Co. v. Serio</u>, 261 F.3d 143, 153–54 (2d Cir. 2001) (recognizing that "certification request merits more respectful consideration" where, among other things, request was made by Attorney General, who advanced possible saving construction of state statute (internal quotation marks and brackets omitted)).  <u>Osterweil v. Bartlett</u>, 706 F.3d 139 (2d Cir. 2013), cited in the dissent, is not to the contrary, as we there certified a question of statutory interpretation to the New York Court of Appeals where, as here, one possible answer would resolve the litigation, while an alternative statutory construction would require this court "to decide the constitutional question."  <u>Id.</u> at 143.  Nor is a proper certification rendered improper because the state court does not approve the possible statutory construction that would have avoided or minimized the constitutional challenge.

B.     The Privileges and Immunities Clause

The Privileges and Immunities Clause states that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."  U.S. Const. art. IV, § 2, cl. 1.  The Clause operates to "place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those states are concerned."  Paul v. Virginia, 75 U.S. (8 Wall.) 168, 180 (1868); see Bach v. Pataki, 408 F.3d 75, 88 (2d Cir. 2005), overruled on other grounds by McDonald v. Chicago, 561 U.S. 742 (2010).[3]  In short, the Clause does not demand that a citizen of one State be allowed to carry with him into another state the privileges and immunities which come with citizenship in his state.  Rather, it guarantees "that in any State every citizen of any other State is to have the same privileges and immunities which the citizens of that State enjoy."  Baldwin v. Fish & Game Comm'n of Mont., 436 U.S. 371, 382 (1978) (internal quotation marks omitted).  It is toward that end that the Clause "prevents a State from discriminating against citizens of other States in favor of its own."  Id. (internal quotation marks omitted).

---

[3] Although the Privileges and Immunities Clause speaks in terms of citizens, it is now well established that "for analytic purposes citizenship and residency are essentially interchangeable."  Supreme Court of Va. v. Friedman, 487 U.S. 59, 64 (1988).

The Privileges and Immunities Clause, however, is "not an absolute" that precludes states from ever distinguishing between citizens and noncitizens. Supreme Court of Va. v. Friedman, 487 U.S. 59, 67 (1988); see Baldwin v. Fish & Game Comm'n of Mont., 436 U.S. at 383 (collecting cases and observing that state need not "always apply all its laws or all its services equally" to citizens and noncitizens). To prevail on a Privileges and Immunities challenge, a plaintiff must demonstrate that the state has burdened nonresident activity that is "sufficiently basic to the livelihood of the Nation as to fall within the purview of the Privileges and Immunities Clause." Supreme Court of Va. v. Friedman, 487 U.S. at 64 (internal quotation marks and alterations omitted). Upon such a showing, the state may defend its position by demonstrating that "substantial reasons exist for the discrimination and the degree of discrimination bears a sufficiently close relation to such reasons." Id. at 67; accord Connecticut ex rel. Blumenthal v. Crotty, 346 F.3d at 94. A court necessarily conducts these inquiries in light of the Supreme Court's recent admonition that constitutionally protected privileges and immunities are burdened "only when [challenged] laws were enacted for [a] protectionist purpose." McBurney v. Young, 133 S. Ct. 1709, 1715 (2013).

In McBurney, which was decided after the district court ruled in this case, a nonresident plaintiff challenged Virginia's Freedom of Information Act ("FOIA") for hampering his ability to pursue a common calling. He alleged that the law, by allowing only Virginia citizens to inspect and copy public records, abridged his ability to engage in the business of "request[ing] real estate tax records on clients' behalf from state and local governments." Id. at 1714–15. The Supreme Court acknowledged that the ability to pursue a common calling is protected by the Privileges and Immunities Clause. See id. at 1715. Nevertheless, it identified no unconstitutional burden because plaintiff had failed to "allege," and "ha[d] offered no proof," that the statute "was enacted in order to provide a competitive economic advantage for Virginia citizens." Id. To the contrary, the statute was enacted with the "distinctly nonprotectionist aim" of allowing "those who ultimately hold sovereign power," i.e., the citizens of Virginia, to "obtain an accounting from the public officials to whom they delegate the exercise of that power." Id. at 1716. The Supreme Court thus concluded that, even if the statute had "the incidental effect of preventing citizens of other States from making a profit by trading on information contained

in state records," in the absence of a showing of discriminatory purpose to favor state citizens, plaintiff could not pursue a Privileges and Immunities claim.  Id.[4]

We do not understand McBurney to state any new principle of law. Nevertheless, McBurney provides a clarification not available to the district court at the time it ruled in this case, specifically, that the Privileges and Immunities Clause does not prohibit state distinctions between residents and nonresidents in the abstract, but "only" those "enacted for the protectionist purpose of burdening out-of-state citizens" with respect to the privileges and immunities afforded the state's own citizens.  133 S. Ct. at 1715; see Baldwin v. Fish & Game Comm'n of Mont., 436 U.S. at 380–81.

Nor do we understand McBurney to suggest that the disparate effects of a challenged state law are completely irrelevant to a Privileges and Immunities inquiry.  As the Supreme Court has recognized in other contexts, burdensome effects can sometimes admit an inference of proscribed intent.  Cf. Washington v.

---

[4] While "incidental" can mean "minor," the context in McBurney suggests that the Supreme Court used the word to mean something occurring "by chance or without intention or calculation."  Webster's Third New International Dictionary 1142 (1986).  Indeed, the Court has used the word in this manner in other discrimination cases.  See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 682 (2009) (rejecting equal protection challenge for failure plausibly to plead discriminatory intent, observing that it was "no surprise" that policy "produce[d] a disparate, incidental impact on Arab Muslims, even though the purpose of the policy was to target neither Arabs nor Muslims" (emphases added)).

Davis, 426 U.S. 229, 241 (1976) (noting relevancy of disproportionate impact to racially discriminatory intent). What McBurney makes plain, however, is that it is protectionist purpose, and not disparate effects alone, that identifies the sort of discrimination prohibited by the Privileges and Immunities Clause, by contrast, for example, to the Commerce Clause. See generally McBurney v. Young, 133 S. Ct. at 1720 (separately analyzing challenged law under dormant Commerce Clause); cf. Comptroller of the Treasury of Md. v. Wynne, 135 S. Ct. 1787, 1801 n.4 (2015) (observing that "Commerce Clause regulates effects, not motives," and does not require court inquiry into "reasons for enacting a law that has a discriminatory effect").[5] Thus, consistent with McBurney, a plaintiff challenging a law under the Privileges and Immunities Clause must allege or offer some proof of a protectionist purpose to maintain the claim. In the absence of such a showing, a Privileges and Immunities claim fails, obviating the need for a tailoring inquiry. See McBurney v. Young, 133 S. Ct. at 1716 (explaining that

---

[5] McBurney cannot be cabined as Judge Hall urges, to Privileges and Immunities challenges to non-economic legislation. See Dissenting Op., post at 9–10. Although Virginia's FOIA was not an economic regulation, McBurney's Privileges and Immunities analysis did not turn on that distinction but, rather, on the plaintiff's failure to adduce proof of protectionist purpose. Indeed, the Court there held that "the Clause forbids a State from intentionally giving its own citizens a competitive advantage in business or employment." McBurney v. Young, 133 S. Ct. at 1716 (emphasis added).

"Clause does not require that a State tailor its every action to avoid any incidental effect on out-of-state tradesmen").[6]

With these principles in mind, we consider Schoenefeld's challenge to § 470.

C.   Schoenefeld Has Adduced No Proof that § 470 Was Enacted for a Protectionist Purpose

Schoenefeld asserts that § 470 violates the Privileges and Immunities Clause both on its face and as applied. Insofar as the law, both on its face and as

---

[6] McBurney did not specify at what step of the traditional two-step inquiry plaintiff must carry this protectionist-purpose burden. The Ninth Circuit recently concluded that protectionist purpose is properly considered at the second step of inquiry. See Marilley v. Bonham, 802 F.3d 958, 964 (9th Cir. 2015). But the case is now awaiting en banc review. See 815 F.3d 1178 (9th Cir. 2016) (mem.). In any event, the panel conclusion in Marilley is not obvious because, at the second step of inquiry, the burden shifts to the defendants, see Supreme Court of Va. v. Friedman, 487 U.S. at 67, and McBurney emphasized the nonresident plaintiff's failure to plead or offer proof of a protectionist purpose for Virginia's FOIA, see 133 S. Ct. at 1715–16; cf., e.g., Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 270 n.21 (1977) (holding, in Equal Protection context, that if plaintiff demonstrates that challenged decision was "motivated in part by a racially discriminatory purpose," burden shifts to government to establish that "same decision would have resulted even had the impermissible purpose not been considered"). For this reason, we cannot readily assume, as our dissenting colleague does, that the Supreme Court's discussion of plaintiff's failure necessarily occurred at the second step of the traditional inquiry. See Dissenting Op., post at 8–9. However, we need not here conclusively decide at what step plaintiff must adduce proof of a protectionist purpose because, in any event, Schoenefeld's failure to carry this burden here defeats her Privileges and Immunities claim.

applied, pertains to the practice of law, the parties agree that § 470 implicates a privilege protected by the Privileges and Immunities Clause.  See Supreme Court of N.H. v. Piper, 470 U.S. 274, 283 (1985); accord Supreme Court of Va. v. Friedman, 487 U.S. at 65.  The parties also do not dispute that § 470 imposes a physical office requirement on nonresident attorneys that does not apply to resident attorneys, who may use their homes as their offices.  See Schoenefeld v. New York, 748 F.3d at 468 (discussing New York precedent recognizing that resident New York attorney may use home as office).

In some circumstances, a facial classification is enough, by itself, to manifest a proscribed intent.  This is most apparent where the facial classification is based on an invidious factor, such as race.  See, e.g., Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 227–36 (1995) (subjecting facial classifications based on race to strict scrutiny review).  But precisely because the Privileges and Immunities Clause is not an absolute, not every facial distinction between state residents and nonresidents will admit an inference of protectionist purpose.  See Supreme Court of Va. v. Friedman, 487 U.S. at 67.  Indeed, in McBurney, the Supreme Court did not find the Virginia FOIA's facial distinction between residents and nonresidents sufficient to admit an inference of protectionist

purpose, particularly in light of statutory text and legislative history to the contrary. We reach the same conclusion with respect to § 470.

In reaching that conclusion we look, as the <u>McBurney</u> Court did with the Virginia FOIA, to the purpose of § 470.[7] That statute's office requirement has its origins in an 1862 predecessor law, Chapter 43, <u>see</u> 1862 N.Y. Laws 139, which was enacted to <u>reverse</u> a court ruling that barred a licensed New York attorney who had moved to New Jersey from further practicing in New York because it might be difficult, if not impossible, to serve him with New York legal process. <u>See</u> <u>Richardson v. Brooklyn City & Newtown R.R.</u>, 22 How. Pr. 368 (N.Y. Sup. Ct. Feb. 1, 1862).[8] The month after that decision, the New York State legislature

---

[7] Because the policy underlying the Virginia FOIA was codified as part of the statutory text, the Supreme Court relied on the statute's plain language to determine its purpose. <u>See</u> <u>McBurney v. Young</u>, 133 S. Ct. at 1715 (quoting Va. Code Ann. § 2.2-3700(B) (2011)).

[8] The court in <u>Richardson</u> explained its concerns as follows:

> Section 409 of the Code regulates the manner of serving papers. It provides that service may be made upon an attorney at his office, by leaving the paper with the person in charge; or if there be no person in the office, by leaving it in a conspicuous place in the office; and if the office be not open to admit of such service, by leaving it at the attorney's residence with some person of suitable age and discretion. These various provisions, and especially the latter, would be rendered

enacted Chapter 43, making clear that such a nonresident lawyer could practice law in New York, as long as he maintained an office in the state, which office the law designated an accepted site for service, thereby eliminating the concern raised in <u>Richardson</u>.  As this history demonstrates, the in-state office requirement was not enacted for the protectionist purpose of burdening nonresident attorneys in practicing law in New York.  Rather, it was enacted to ensure that every licensed New York lawyer, whether a state resident or not, could practice in the state by providing a means for the nonresident attorney to establish a physical presence in the state (and therefore place for service) akin to that of a resident attorney.  A statute enacted for such a nonprotectionist purpose is not vulnerable to a Privileges and Immunities challenge.  <u>See</u> <u>McBurney v. Young</u>, 133 S. Ct. at 1715.

In 1877, Chapter 43's office requirement and office service authorization were codified at § 60 of New York's new Code of Civil Procedure.  <u>See</u>

---

> nugatory if attorneys who resided out of the state were permitted to practice.  An attorney might keep his office closed and empty, and, if he had no residence within the state, might entirely evade the service of papers, and baffle his adversary and the court.

<u>Id.</u> at 370.

Schoenefeld v. State, 25 N.Y.3d at 27, 6 N.Y.S.3d at 224.  In a 1909 recodification, however, the two provisions were divided, with the service part remaining at § 60, while the office requirement became § 470.  As the New York Court of Appeals observed, the latter requirement has remained virtually unchanged to the present, while state law and court rules now authorize service by various means in addition to home and office.  See id. at 28, 6 N.Y.S.3d at 224.  But even if § 470's office requirement is now largely vestigial as a means for ensuring service, the fact remains that the law was enacted for that nonprotectionist purpose, and Schoenefeld has adduced no evidence of a protectionist intent to afford some economic advantage to resident New York lawyers.

In urging otherwise, Schoenefeld argues that Chapter 43 must be viewed in context, as an exception to what was then New York's general ban on nonresident attorneys.  The argument fails because Schoenefeld has not been burdened by that general ban, which was invalidated in 1979.  See In re Gordon, 48 N.Y.2d 266, 422 N.Y.S.2d 641 (1979).  Further, she offered no proof that the office requirement was enacted to further the general ban so as to admit an inference of protectionist intent.  Rather, as just noted, the office requirement was enacted as an exception to the ban, ensuring an in-state place of service so that,

once admitted, nonresident New York lawyers could practice in the state's courts on functionally the same terms as resident lawyers.

No more can a protectionist purpose be inferred from the 1877 and 1909 recodifications of the office requirement or from New York's failure thereafter to repeal § 470. After the New York Court of Appeals struck down the state's general ban on the admission of nonresident lawyers, see In re Gordon, 48 N.Y.2d at 269, 422 N.Y.S.2d at 642–43, the legislature "amended several provisions of the Judiciary Law and the CPLR to conform to that holding," Schoenefeld v. State, 25 N.Y.3d at 28, 6 N.Y.S.3d at 224. Schoenefeld offers no evidence that anyone identified a need to repeal § 470 as part of that process, much less that the legislature thereafter refused to do so for the protectionist purpose of favoring resident attorneys. See McBurney v. Young, 133 S. Ct. at 1715.[9] Where a legislature thus manifests its readiness to conform its laws to the

_____

[9] As Judge Hall notes, the legislature did propose an amendment to § 470 in 1986 that was not enacted. See Dissenting Op., post at 20 n.11. But that amendment would still have "mandate[d] that a nonresident attorney have a law office in [New York] before appearing as an attorney of record in any action or proceeding in a court [in the state]." J.A. 132. The amendment's proponents explained that while New York could not limit bar membership to state residents, "it could act to insure the quality of its Bar by adopting reasonable measures that would have special regulatory effect on nonresident attorneys." Id. Insofar as Judge Hall contends that the amendment would have permitted nonresident attorneys without an office in New York to practice in the state so

Privileges and Immunities Clause, a plaintiff must point to more than a failure to amend or repeal a statute enacted for a nonprotectionist purpose to demonstrate that the law is being maintained for a protectionist purpose.[10]  The subsequent availability of other means of service warrants no different conclusion because, in the absence of some showing of protectionist purpose, a state need not demonstrate that its laws are narrowly tailored to a legitimate purpose.  See id. at 1716 (rejecting Privileges and Immunities claim for failure to demonstrate protectionist purpose without conducting tailoring inquiry).

---

long as they did not appear as attorneys of record, see Dissenting Op., post at 20 n.11, that conclusion appears grounded not in the amendment's text, but in pro hac vice rules existing to this day.  See N.Y. Comp. Codes R. & Regs. tit. 22, § 520.11 (2016) (permitting member of bar of another state to be admitted pro hac vice provided that, inter alia, attorney is associated with member in good standing of New York bar "who shall be the attorney of record in the matter"); J.A. 133 (explaining that proposed 1986 amendment to § 470 would not "unduly burden[]" nonresident attorney who was "unwilling or unable to maintain" an in-state office because that attorney could practice "so long as local counsel c[ould] be found to appear as attorney of record").

[10] A recent statutory amendment and a newly-promulgated rule of the New York Court of Appeals, cited to us by the parties in Fed. R. App. P. 28(j) letters, further indicate that New York is not pursuing a protectionist purpose in regulating the practice of law.  See N.Y. C.P.L.R. 2103(b)(2) (McKinney 2016) (approving service by mail "made from outside the state"); N.Y. Comp. Codes R. & Regs. tit. 22, § 523.2 (2016) (permitting lawyer not admitted in New York to engage in temporary practice of law within state provided, among other things, that lawyer is licensed to practice in another state or even "a non-United States jurisdiction").

Further, this is not a case where the alleged burdensome effects of the challenged statute admit an inference of protectionist purpose.[11] While § 470's office requirement expressly pertains only to nonresident attorneys, the requirement serves, as we have already observed, to place admitted resident and nonresident attorneys on an equal footing, not to favor the former over the latter. To practice law in New York, _every_ attorney admitted to its bar must have a presence in the state in the form of a physical premises.[12] The fact that a

---

[11] The law of the case doctrine does not bar us from reaching this conclusion because contrary to our dissenting colleague's suggestion, see Dissenting Op., post at 3–5, 22–23, neither our prior panel opinion nor the New York Court of Appeals' response thereto conclusively decided the issue. See DiLaura v. Power Auth. of State of N.Y., 982 F.2d 73, 76 (2d Cir. 1992). Our prior panel opinion decided only to certify the question of § 470's minimum requirements to the New York Court of Appeals in light of a statutory construction then urged by the Attorney General that might moot Schoenefeld's constitutional challenge. In this context, our observation that, if construed to require a physical office, § 470 imposed a "significant expense" on nonresident attorneys, Schoenefeld v. New York, 748 F.3d at 468, is at most dictum that does not bind us here, see Schwabenbauer v. Bd. of Educ. of City School Dist. of City of Olean, 777 F.2d 837, 842 (2d Cir. 1985) (concluding that statements in prior opinion in same case were "not necessary to or a part of" prior decision and were, therefore, non-binding dicta). Meanwhile, the New York Court of Appeals held only that § 470 required nonresident attorneys to maintain a physical office in the state. See Schoenefeld v. State, 25 N.Y.3d at 26–27, 6 N.Y.S.3d at 223.

[12] Thus, this case is not akin to Friedman and Piper, cited by the dissent. See Dissenting Op., post at 21, 24 (citing Supreme Court of Va. v. Friedman, 487 U.S. at 70 (concluding that Virginia rule permitting only residents to be admitted to bar on motion, while nonresidents were required to take and pass bar

nonresident attorney will have to establish that presence by leasing an office, while a resident attorney can use his home, does not unduly burden the nonresident. Not only is the expense of a New York office likely to be less than the expense of a New York home, but Schoenefeld has adduced no evidence indicating that significant numbers of resident New York attorneys in fact practice from their homes rather than from offices. Indeed, decisions from sister circuits suggest otherwise. Cf. Kleinsmith v. Shurtleff, 571 F.3d 1033, 1038 (10th Cir. 2009) (observing that, although trust statute would permit Utah attorneys to use home as requisite place of business within state, it was hardly apparent that many would wish to do so); Tolchin v. Supreme Court of N.J., 111 F.3d 1099, 1107–08 (3d Cir. 1997) (noting lack of evidence that, in New Jersey, attorneys practice from their homes).

Schoenefeld nevertheless contends that § 470 is unconstitutional because the statute, as applied, requires her to incur the costs of a New York office when she is already incurring the costs of her New Jersey home and office. The flaw in this argument is that Schoenefeld's New Jersey expenses are not a product of

---

examination, violated Privileges and Immunities Clause); Supreme Court of N.H. v. Piper, 470 U.S. at 288 (holding that New Hampshire rule excluding nonresidents from bar violated Clause)).

New York law.  New York can be held to account under the Privileges and Immunities Clause only for the condition <u>it</u> imposes on Schoenefeld to practice law in the state, that is, the leasing of an office.  As noted, Schoenefeld fails to show that the burden on a nonresident of maintaining an office in New York is greater than the burden on a resident of maintaining a home (and frequently a home and office) in New York.  In any event, the Privileges and Immunities Clause "'does not promise nonresidents that it will be as easy for [them] as for residents to comply with a state's law.'"  <u>Schoenefeld v. New York</u>, 748 F.3d at 467 (quoting <u>Kleinsmith v. Shurtleff</u>, 571 F.3d at 1044–45 (observing that "typically it is harder for a nonresident to conduct a business or a profession in a state than it is for a resident")).  It promises only that state laws will not differentiate for the protectionist purpose of favoring residents at the expense of nonresidents.  <u>See</u> <u>McBurney v. Young</u>, 133 S. Ct. at 1715.   The effects resulting from § 470's application to Schoenefeld manifest no such protectionist intent.

Indeed, the effects of § 470, as applied, are no different from those of a law that on its face requires all attorneys to maintain a physical presence in New York.  Sister circuits have upheld such statutes against Privileges and Immunities challenges.

For example, <u>Kleinsmith v. Shurtleff</u> involved a Privileges and Immunities challenge to a Utah statute requiring "all attorneys who act as trustees of real-property trust deeds in Utah to 'maintain[] a place within the state.'" 571 F.3d at 1035 (alteration in original) (quoting Utah Code Ann. § 57-1-21(1)(a)(i) (2009)). Plaintiff argued that the law discriminated against nonresidents because residents could use their homes as the specified "place within the state," while nonresidents would need to lease offices. <u>Id.</u> at 1044. The Tenth Circuit, however, held that the law was neutral because it equally required all trustees to have a physical presence in the state. <u>See id.</u> at 1044–47. In reaching this conclusion, the court relied on the statute's lack of facial classification between residents and nonresidents. <u>See id.</u> at 1046. But insofar as plaintiff complained of a disparate impact as applied, the court held it "irrelevant to the [Privileges and Immunities] Clause whether the practical effect of the maintain-a-place requirement . . . burdens nonresidents disproportionately." <u>Id.</u> at 1047.

Similarly, in <u>Tolchin v. Supreme Court of New Jersey</u>, the Third Circuit upheld a New Jersey law requiring all attorneys to maintain a "<u>bona fide</u> office" within the state, while recognizing that only resident attorneys could use their homes to satisfy the requirement. 111 F.3d at 1107–08. As in <u>Kleinsmith</u>, the

court identified no Privileges and Immunities Clause violation because the law "similarly affect[s] residents and nonresidents. Resident and nonresident attorneys alike must maintain a New Jersey office." Id. at 1113.[13]

While the laws at issue in these two cases did not facially classify on the basis of residence, to the extent Schoenefeld complains of the burdensome effects of § 470 as applied, facial classification is irrelevant. The effects of § 470 and the laws at issue in Kleinsmith and Tolchin are virtually identical. The critical question, then, is whether a law that effectively requires nonresident attorneys to maintain a physical presence in New York akin to that already maintained by resident attorneys unduly burdens the former's ability to practice law. Like the

---

[13] New Jersey has since eliminated its physical office requirement, while continuing to impose various conditions that may most easily be satisfied through an office. See N.J. R. Ct. 1:21-1(a)(1) (2015) ("An attorney need not maintain a fixed physical location for the practice of law, but must structure his or her practice in such a manner as to assure, as set forth in RPC 1.4, prompt and reliable communication with and accessibility by clients, other counsel, and judicial and administrative tribunals before which the attorney may practice, provided that an attorney must designate one or more fixed physical locations where client files and the attorney's business and financial records may be inspected on short notice by duly authorized regulatory authorities, where mail or hand-deliveries may be made and promptly received, and where process may be served on the attorney for all actions . . . that may arise out of the practice of law and activities related thereto."). We need not here consider whether New York might do the same because, absent a protectionist purpose, the conditions imposed by a state even on nonresidents pursuing a profession within its borders do not implicate the Privileges and Immunities Clause so as to require tailoring analysis. See McBurney v. Young, 133 S. Ct. at 1716.

Third and Tenth Circuits, we conclude that it does not.  The conclusion finds

further support in <u>dictum</u> in <u>Supreme Court of Virginia v. Friedman</u>, wherein the

Supreme Court recognized that an in-state office requirement could serve as a

nonprotectionist alternative to residency in safeguarding state interests

respecting the practice of law.  <u>See</u> 487 U.S. at 70 (invalidating residency

condition for admission on motion to bar and observing that office requirement

adequately protected state interest in limiting such admissions to full-time

practitioners); <u>see generally</u> <u>Newdow v. Peterson</u>, 753 F.3d 105, 108 n.3 (2d Cir.

2014) (acknowledging "obligation to accord great deference to Supreme Court

<u>dicta</u>, absent a change in the legal landscape" (internal quotation marks

omitted)).[14]

---

[14] <u>Frazier v. Heebe</u>, 482 U.S. 641 (1987), cited by Judge Hall, is not to the contrary. <u>See</u> Dissenting Op., <u>post</u> at 17 & n.9.  In there concluding that the United States District Court for the Eastern District of Louisiana could not impose an in-state office requirement for admission to its bar, the Supreme Court relied on its supervisory authority over local federal rules and expressly declined to reach the Privileges and Immunities challenge.  <u>See</u> <u>Frazier v. Heebe</u>, 482 U.S. at 645, 647 n.7 (explaining that Court's supervisory authority permits it to intervene to protect integrity of federal system, whereas "authority over state-court bars is <u>limited</u> to enforcing federal constitutional requirements" (emphasis added)); <u>see also</u> <u>id.</u> (stating that rules differentiating between resident and nonresident attorneys are "more difficult to justify in the context of federal-court practice than they are in the area of state-court practice").

What Schoenefeld in fact seeks through this action is not to practice law in New York on the same conditions as a resident attorney who by virtue of home (or home and office) maintains a physical presence in the state. Rather, she seeks to practice law on different terms, specifically, without maintaining a physical presence in the state. The Privileges and Immunities Clause proscribes laws that favor residents over nonresidents in their pursuit of a common calling. It does not mandate that nonresidents be allowed to practice law in a state on terms different from those applicable to residents.

Accordingly, whether Schoenefeld challenges § 470 on its face or as applied, her Privileges and Immunities Clause claim fails because she has not demonstrated that the law was enacted for or serves the protectionist purpose of favoring resident New York attorneys and disfavoring nonresident attorneys in practicing law in the state's courts. See McBurney v. Young, 133 S. Ct. at 1715. We therefore reverse the district court decision declaring § 470 violative of the Privileges and Immunities Clause.

III.    Conclusion

To summarize, we conclude as follows:

1.      The Supreme Court has recently clarified that state laws violate the Privileges and Immunities Clause "only when those laws were enacted for the

protectionist purpose of burdening out-of-state citizens." <u>McBurney v. Young</u>, 133 S. Ct. at 1715.

2.    New York's in-state office requirement for nonresident attorneys admitted to the state's bar, N.Y. Judiciary Law § 470, was not enacted for a protectionist purpose disfavoring nonresident admitted attorneys but, rather, for the nonprotectionist purpose of affording such attorneys a means to establish a physical presence in the state akin to that of resident attorneys, thereby eliminating a court-identified service-of-process concern.

3.    Schoenefeld has offered no proof of an animating protectionist purpose, either on the face of the statute or inferred from its effects as applied. Indeed, the effect of § 470, as applied, is no different from a neutral statute requiring all licensed New York attorneys, resident and nonresident alike, to maintain a physical presence in the state, which raises no Privileges and Immunities concern.

4.    Schoenefeld cannot point to the expenses of her practice in New Jersey, not required by New York law, to pursue a Privileges and Immunities challenge to § 470 in the absence of any proof that that statute's in-state office requirement was enacted for a protectionist purpose.

Accordingly, we REVERSE the district court's judgment invalidating § 470, and we REMAND the case with instructions to deny Schoenefeld's motion for summary judgment and to award judgment in favor of defendants.